IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GARY DAWSON,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | 2:18-cv-01660-ACA |
| ] | |
| **SOCIAL SECURITY** ] | |
| **ADMINISTRATION,** ] | |
| **COMMISSIONER,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Plaintiff Gary Dawson appeals the decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further administrative proceedings.

## I. PROCEDURAL HISTORY

On November 5, 2015, Mr. Dawson applied for a period of disability and disability insurance benefits, alleging that his disability began on October 9, 2015.[1] (R. 136). The Commissioner initially denied his application and he requested review

---

[1] Mr. Dawson states that he also applied for supplemental security income. (Doc. 16 at 1). However, his application expressly stated that he was not applying for supplemental security income. (R. at 136).

by an Administrative Law Judge ("ALJ"). (*Id.* at 66, 68, 73). After holding a hearing (*id.* at 37–52), the ALJ issued an unfavorable decision (*id.* at 15–30). On August 13, 2018, the Appeals Council denied Mr. Dawson's request for review of the unfavorable decision. (R. at 1). The Commissioner's decision is now final and ripe for judicial review. *See* 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Where the ALJ denies benefits and the Appeals Council denies review, [this court] review[s] the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks and alteration omitted).

"Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists 'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Henry*, 802 F.3d at 1267 (quoting *Winschel*, 631 F.3d at 1178). The court may not "decide the facts anew, reweigh the evidence," or substitute its judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against

2

the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir.2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Mr. Dawson had not engaged in substantial gainful activity since his alleged disability onset date of October 9, 2015. (R. at 20). He found that Mr. Dawson had four severe impairments: chronic obstructive

3

pulmonary disease, osteoarthritis, degenerative disc disease, and obesity. (*Id.*). He also found that Mr. Dawson had several non-severe impairments, including pain in his hands, wrists, left elbow and left ankle, and chronic kidney disease. (*Id.* at 20–21). The ALJ concluded that Mr. Dawson did not have an impairment or combination of impairments that met or medically equalled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 21–23).

Next, the ALJ determined that Mr. Dawson had the residual functional capacity to perform a range of light work except that he faced some additional limitations, including an inability to climb ladders, rope, or scaffolds; an inability to perform around hazards or in concentrated exposure to extreme cold temperatures or high levels of humidity; a need for a cane to walk over rough, uneven, or slippery surfaces; and the ability to climb ramps or stairs only occasionally. (R. 23). Based on that residual functional capacity, the ALJ found that Mr. Dawson was unable to perform any past relevant work. (R. 28). However, relying on testimony from a vocational expert, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Dawson could perform, including marker/labeler, packer, and assembler. (*Id.* at 29). Accordingly, the ALJ determined that Mr. Dawson had not been under a disability as defined in the Social Security Act from October 9, 2015 through the date of the decision on March 7, 2018. (*Id.* at 29–30).

## IV. DISCUSSION

Mr. Dawson contends that the ALJ erred, first, by failing to given sufficient weight to the opinions of three treating physicians who all opined that he is unable to work, and second, by failing to find as severe impairments his carpal tunnel syndrome, neuropathy, arthritis of his hands and wrists, and obstructive sleep apnea. (Doc. 16 at 11–22). Although the court has concerns about the rationales articulated by the ALJ to support his determination of the weight to give Mr. Dawson's treating physicians, the court will not address that argument because it finds that the ALJ committed reversible error in finding the severity of Mr. Dawson's carpal tunnel syndrome, neuropathy, arthritis of the hands and wrists, and obstructive sleep apnea.

Although the ALJ found that Mr. Dawson had severe impairments of chronic obstructive pulmonary disease, osteoarthritis, degenerative disc disease, and obesity, the ALJ found as non-severe Mr. Dawson's pain in his hands, wrists, left elbow, and left ankle, as well as his chronic kidney disease. (*See* R. at 20–21). The ALJ addressed Mr. Dawson's carpal tunnel syndrome and neuropathy in determining that any impairments caused by the pain in Mr. Dawson's hands and wrists were non-severe, but he did not determine the severity of Mr. Dawson's obstructive sleep apnea. (*See id.*). Mr. Dawson argues that the ALJ erred by failing to find that his obstructive sleep apnea, carpal tunnel syndrome, arthritis of the hands and wrists, and neuropathy were severe impairments. (Doc. 16 at 18–22).

5

The Social Security regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.* § 404.1522(b)(1). "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). The court reviews for harmlessness an ALJ's determination that an impairment is non-severe. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268–70 (11th Cir. 2019) (finding that the ALJ erred in finding an impairment non-severe and that the error was harmful because the ALJ failed to consider that impairment at later steps in the sequential analysis).

The ALJ acknowledged Mr. Dawson's carpal tunnel syndrome and neuropathy twice: once in finding that the pain in Mr. Dawson's hands and wrists was non-severe, and once in discussing Mr. Dawson's residual functional capacity. In finding Mr. Dawson's hand and wrist pain to be non-severe, the ALJ acknowledged Mr. Dawson's diagnosis of carpal tunnel syndrome and that a physician had discussed surgical intervention to address his wrist pain. (R. at 21). But the ALJ found those impairments non-severe because "[t]he record does not

6

contain any other objective or diagnostic findings relative to the hands, wrists, or upper extremities." (*Id.*).

Then, in determining that Mr. Dawson's residual functional capacity, the ALJ noted that a hand surgeon had recommended and scheduled surgery, but that Mr. Dawson postponed the surgery to get a second opinion. (*Id.* at 23). The second physician also recommended surgery, but Mr. Dawson had not rescheduled the surgery because he was seeking an evaluation of his cervical spine relating to finger numbness. (*Id.* at 23–24). Despite the medical evidence showing that Mr. Dawson has sought medical help for numbness, tingling, and loss of grip strength (r. at 441, 448, 487), that is the entirety of the discussion of Mr. Dawson's carpal tunnel syndrome and neuropathy. The court finds that Mr. Dawson met his light burden of showing the severity of his carpal tunnel syndrome and neuropathy. *See Schink*, 935 F.3d at 1265 ("A claimant's burden to establish a severe impairment at step two is only mild.") (quotation marks omitted).

As for Mr. Dawson's obstructive sleep apnea, the ALJ did not discuss that disorder in evaluating the severity of Mr. Dawson's impairments. (R. at 20–21). The only mention of obstructive sleep apnea is the ALJ's acknowledgement that Mr. Dawson had reported a diagnosis of obstructive sleep apnea to his pulmonologist and that Mr. Dawson's pain management specialist had prescribed sleep medication. (*Id.* at 24–25). However, as Mr. Dawson points out, the record

7

contains evidence that Mr. Dawson has complained of daytime sleepiness and a sleep study showed "[o]bstructive apneas, [s]pontaneous arousals, central apneas, hypopneas, periodic leg movements, moderate snoring, EKG arrhythmias, and wake after sleep onset." (R. at 553). The ALJ did not address any of that evidence. Accordingly, the court finds that the ALJ erred in failing to address the severity of Mr. Dawson's obstructive sleep apnea.

Moreover, the court finds that these errors are not harmless. As to Mr. Dawson's carpal tunnel syndrome, although the ALJ acknowledged in passing Mr. Dawson's need for hand surgery, he did not discuss how carpal tunnel syndrome—serious enough to garner two recommendations for surgery—affected Mr. Dawson's ability to do light exertional work. (*See* R. at 23–27). As to his neuropathy, the ALJ did not address Mr. Dawson's reports of dropping items and losing grip strength. (*See id.*). And as to his obstructive sleep apnea, the ALJ did not address Mr. Dawson's reported daytime sleepiness. (*See id.*). "Consideration of all impairments, severe and non-severe, is required when assessing a claimant's [residual functional capacity]." *Schink*, 935 F.3d at 1268. The ALJ did not do so in this case, and so the court must reverse and remand for further administrative proceedings.

## V. CONCLUSION

The court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further proceedings. The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this October 29, 2019.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE